## PEOPLE v. TSITSERA.

(Supreme Court, Appellate Division, Second Department.   May 6, 1910.)

1. FOOD   (§   14*)—MILK—ILLEGAL   SALE—INTENT—PENALTY—"ADULTERATED MILK."

Agricultural Law (Consol. Laws, c. 1) § 32, forbids that adulterated milk be sold, offered, or exposed for sale, and section 52 provides a penalty for violations of the act.   Section 30 defines adulterated milk as milk below a specified standard.   *Held*, that persons selling, or offering or exposing for sale, milk which does not conform to the standard, incur the penalty, irrespective of knowledge, intent, or moral wrong.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 14.*

For other definitions, see Words and Phrases, vol. 1, pp. 211, 212.]

2. FOOD (§ 16*)—ILLEGAL SALE OF MILK—PENALTY—ACTION—EVIDENCE.

In an action by the people for a penalty for selling adulterated milk, where defendant was a restaurant keeper, evidence that when asked if he served the milk, from which the sample was taken, that he said he did in the coffee and also sold it by the glass, was sufficient to show that he sold, offered, and exposed for sale the adulterated milk.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 16.*]

3. FOOD (§ 3*)—ILLEGAL SALE OF MILK—MANNER OF TAKING SAMPLE—STATUTORY REQUIREMENTS.

Agricultural Law (Consol. Laws, c. 1) § 35, provides that, before the person takes a sample of milk, he shall request the person in charge of it at the time of inspection to thoroughly stir it before the sample is taken, and that the person taking the sample of milk for analysis shall take duplicate samples in the presence of at least one witness, seal both samples, and deliver one to the person having the custody of the milk, with a statement in writing of the cause of the taking of the sample.   After stirring up the milk in a can, the inspector filled a test tube, and made an examination with a lactometer.   Suspicion being aroused, the milk was returned to the can, and defendant asked to stir the milk, which he did.   Duplicate samples were then taken, in the presence of a witness, both sealed, and one delivered to defendant, the other being delivered to the chemist who made the analysis, which resulted in showing that the milk was adulterated.   *Held* a sufficient compliance with the statute; the fact that the inspector stirred the milk before making the first examination being of no consequence, as that sample was returned to the can and not made the subject of any analysis, and the statute expressly relates to a "sample of milk for analysis."

[Ed. Note.—For other cases, see Food, Dec. Dig. § 3.*]

4. FOOD (§ 3*)—ILLEGAL SALE OF MILK—SAMPLE—INSPECTOR'S WRITTEN STATEMENT—SUFFICIENCY.

Under Agricultural Law (Consol. Laws, c. 1) § 35, requiring the inspector taking a sample of milk for analysis to make a statement in writing of the cause of the taking of the sample, where the inspector put a statement in writing upon the two bottles containing the sample, as follows: "Milk thought to be impure and below standard fixed by chapter 1 of the consolidated laws of 1909 as amended, and sample taken to be analyzed for that reason"—there was a sufficient compliance with the statute.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 3.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. **FOOD (§ 16*)—SALE OF MILK—SKIMMED MILK—MATTER OF DEFENSE—PROOF.**
Agricultural Law (Consol. Laws, c. 1) § 44, provides that, except in certain counties, the prohibition against selling adulterated milk does not apply to skimmed milk, unadulterated except by skimming, if sold for and as skimmed milk. Defendant in an action for a penalty for selling adulterated milk contended that there was no proof that he was not offering the milk for sale as skimmed milk. *Held,* that this was a matter of defense, and plaintiffs were not bound to prove a negative as part of its case.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 16.*]

Appeal from Municipal Court, Borough of Queens, First District.

Action by the People of the State of New York against George Tsitsera. Judgment for defendant, and plaintiff appeals. Reversed, and new trial ordered.

Argued before JENKS, BURR, THOMAS, RICH, and CARR, JJ.

Emile E. Rathgeher, for the People.
William Rasquin, Jr., for respondent.

BURR, J. The agricultural law provides that:

"No person shall sell or exchange or offer or expose for sale or exchange, any unclean, impure, unhealthy, adulterated or unwholesome milk." Consol. Laws, c. 1, § 32.

It further provides that:

"Every person violating any of the provisions of this chapter, shall forfeit to the people of the state of New York the sum of not less than fifty dollars nor more than one hundred dollars for the first violation and not less than one hundred dollars nor more than two hundred dollars for the second and each subsequent violation." Id. § 52.

This action was brought to recover the penalty provided for selling or offering for sale adulterated milk. At the close of plaintiff's case, the complaint was dismissed, and, from the judgment then entered, this appeal is taken.

The same act defines adulterated milk to mean "(1) milk containing more than eighty-eight per centum of water or fluids"; or "(2) milk containing less than twelve per centum of milk solids"; or "(3) milk containing less than three per centum of fats." Id. § 30. Persons selling or offering or exposing for sale milk which does not conform to this standard incur the penalty, irrespective of knowledge, intent, or moral wrong. People v. Bowen, 182 N. Y. 1, 6, 74 N. E. 489; People v. Kibler, 106 N. Y. 321, 12 N. E. 795. The undisputed evidence in this case establishes that the milk in question, when subjected to chemical analysis, violated the standard in each of the three respects specified.

Defendant claims, first, that there was no sufficient evidence that he sold or offered or exposed for sale this adulterated milk. He kept a restaurant in Flushing. The testimony of the state inspector is that: When he and his companion entered said restaurant, he told the defendant: "We are inspectors, and we want to look at the milk which you serve." Defendant thereupon produced the can from which the sample was taken, which was afterward analyzed. When asked if he served this milk in the restaurant, he said he did in the coffee and also by the glass—"sold it by the glass." This was sufficient upon this point.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The second objection raised by defendant is that the samples which were analyzed were not taken in the manner required by the statute, which provides that:

"When the commissioner of agriculture, an assistant commissioner, or any person or officer authorized by the commissioner, or by this chapter, to examine or inspect any product manufactured or offered for sale shall in discharge of his duties take samples of such product, he shall before taking a sample, request the person delivering the milk or who has charge of it at the time of inspection, to thoroughly stir or mix the said milk before the sample is taken. * * * The person taking the sample of milk for analysis shall take duplicate samples thereof in the presence of at least one witness, and he shall in the presence of such witness seal both of such samples, and shall tender, and, if accepted, deliver at the time of taking, one sample to the manufacturer or vendor of such product, or to the person having custody of the same, with a statement in writing of the cause of the taking of the sample." Id. § 35.

There is no dispute that the witness Esmay was authorized by the commissioner of agriculture to examine and inspect this milk. On the day in question, while in the company of Frank A. Jones, after the can had been produced, he took the cover off the can, mixed the milk, and stirred it up and filled the test tube and made an examination of it with a lactometer. That examination exciting his suspicion, he returned the milk from the test tube back to the can, and then asked the defendant himself to stir and mix the milk, which he did. After that he again filled the test tube, and then, in the presence of Jones, took duplicate samples thereof, sealed both of such samples, and delivered one to defendant. The other sample was delivered to the chemist who made the analysis which resulted in showing that the milk was adulterated. This was a sufficient compliance with the provisions of the statute. The fact that Esmay himself stirred the milk before making the first examination is of no consequence, since that sample was returned to the can, and not made the subject of any analysis. The terms of the statute expressly relate to a "sample of milk for analysis." Before this sample was taken, the provisions of the statute were strictly complied with.

Defendant further contends that there is no evidence that the sample given to him contained a statement in writing of the cause of the taking of the sample. Esmay testified that, when he had sealed the two bottles containing the sample, he put a statement in writing on them, and that the one delivered to the defendant contained the same statement as the one which he retained. Upon that bottle, which was offered in evidence, was the following statement:

"Milk thought to be impure and below standard fixed by chapter 1 of the consolidated laws of 1909 as amended, and sample taken to be analyzed for that reason."

This was a sufficient compliance with the statute in this regard.

Finally, defendant contends that there is no proof that he was not offering this for sale as skimmed milk and that the statute provides that:

"Except in the counties of New York and Kings, the prohibitions contained in this article against the sale of adulterated milk shall not apply to skim milk, which is clean, pure, healthy, wholesome and unadulterated, except by skimming, sold for use in the county in which it is produced or an adjoining county, if it is sold for and as skimmed milk." Id. § 44.

This was matter of defense, and plaintiffs were not bound to prove a negative as part of their case. People v. Kibler, supra. In that case the court say:

"The proof on the part of the prosecution was of the sale of one pint of milk which was below the lawful standard. That made a prima facie case. Why the milk was below the standard, or by what means the result had been accomplished, the prosecution were not bound to prove. If the effect came from skimming the milk, and the sale was within the exception of the statute, that was matter of defense, and especially for the reason that the fact, if it existed, was one peculiarly within the knowledge of the defendant, and which he could readily prove by his own testimony."

The proof in this case was quite sufficient to call upon defendant to introduce evidence, if he had any, in his own behalf, and the motion for a nonsuit was improperly granted.

The judgment of the Municipal Court should be reversed and a new trial ordered, costs to abide the event. All concur.